MARGARETHE RIESTER, as Administratrix, etc., of JOSEPH RIESTER, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Contributory negligence — injury from being struck while on a railroad track.*

In an action brought to recover damages for the death of the plaintiff's intestate, alleged to have resulted from the negligence of the defendant, a railroad corporation, it appeared that the accident occurred at the railroad station at Williams Bridge, in the city of New York, at which point there were four tracks, the two middle tracks, used for express trains, being fenced in through the whole length of the station by fences, each of which contained a gate at about its middle point, which was intended, however, only for the use of employees.

The evidence tended to show that the deceased, who was familiar with stations near New York, had gone to Williams Bridge from One Hundred and Twenty-fifth street, and that he had a return coupon. The north-bound and the south-bound tracks were reached only by separate stairways at either end of a bridge which carried a street over the tracks. A few minutes before the accident the deceased was seen, upon the platform for north-bound trains, walking southerly along that platform. He was not seen again until the engineer of a north-bound train saw him on the rails of that track about fifteen feet in front of the engine which killed him, the approach of which could be seen from that point for a distance of 900 feet.

*Held,* that the deceased was guilty of contributory negligence as matter of law;

That from his familiarity with the station he must have known that he had no right to cross the tracks, from one platform to another, through the picket fence;

That, assuming that he attempted to cross the tracks after the train had come in sight, as the approaching train was visible at a distance of 900 feet, he must be presumed to have seen it;

That if he was standing on the north-bound track he was clearly negligent.

APPEAL by the plaintiff, Margarethe Riester, as administratrix, etc., of Joseph Riester, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 31st day of January, 1896, upon the dismissal of her complaint, directed by the court at the close of the plaintiff's case, for want of proof of a cause of action, after a trial at a Trial Term of the Supreme Court held in and for the county of New York.

*Flamen B. Candler* and *Egerton L. Winthrop, Jr.*, for the appellant.

*Daniel W. Tears*, for the respondent.

Williams, J. :

The action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The accident from which the death resulted took place in the evening of the 21st day of March, 1894, at the defendant's station at Williams Bridge in the city of New York, on the line known as the New York and Harlem railroad. The deceased did not recover consciousness after the accident, before his death. All that the evidence disclosed as to the accident and the circumstances surrounding the deceased and leading up to the accident, was, that the deceased was a business man about thirty-four years of age, and had for years before the accident lived and carried on business as a butcher, in Harlem, in the city of New York. He left his home and place of business about one o'clock on the day of the accident, saying he was going to Williams Bridge to look at some lots he thought of purchasing. After the accident there was found in his pocket a ticket for the Harlem division of the defendant's road issued the day of the accident, being a return coupon from Williams Bridge to One Hundred and Twenty-fifth street.. We may assume, therefore, that the deceased, on the day of the accident, rode upon one of the defendant's trains from One Hundred and Twenty-fifth street to Williams Bridge, and left the train at that station, although no witness testified to seeing him do so. There were four tracks passing the station, at Williams Bridge, on the defendant's road. The two middle tracks were devoted to the use of express or through trains which did not stop at that station, and these two tracks were inclosed within picket fences running the whole length of the station. The two other tracks were devoted to the use of local trains which stopped at the station, and there was a platform on either side for the accommodation of passengers in entering and leaving the trains, that is, one platform east of the most easterly track for the south-bound trains, and another west of the most westerly track for the north-bound trains. The tracks through the station were some twenty-four feet below the streets, and the only approaches to the

two platforms were at the southerly end of the station from the bridge which carried Alden avenue over the tracks. There were signs at the head of each stairway on the bridge indicating to which trains the stairway led, and a sign also at the foot of each stairway indicating which way the trains stopping at that platform went. There was a station building, waiting room and ticket office upon each platform, and the platforms were about 300 feet long. The bridge, stairways and platforms were well lighted in the evening, and the signs at the head and foot of each stairway were plainly visible at night as well as in the daytime. There was a plank crossing, about in the middle of the station, fifteen feet six inches wide, running across the tracks between the two platforms, with sliding gates in the two picket fences inclosing the two middle tracks. This crossing was for the use of the employees alone and others were not allowed to use it. The gates were kept closed though not locked, and were closed at the time of the accident.

There were about sixty-two trains passing and which stopped at the station, between early morning and late evening of each day, one-half of which stopped at each of the platforms, and in addition to this there were about forty other trains passing the station on the other tracks. A local train bound north passed the station at six-seventeen P. M. on the day of the accident. There was another local train bound north due at the station at six-thirty-six P. M. The accident occurred when the six-thirty-six train bound north came into the station. It was the engine of this train that struck the deceased. Just before six-thirty P. M. the deceased was seen upon the platform for north-bound trains, and he was then walking southerly along that platform. There were but few persons upon the platform at that time or just before the accident. The deceased was not seen after the time he was walking along the platform of the north-bound trains before the accident by any one except the engineer upon the engine that struck him. When deceased left the platform of north-bound trains, and where he went and what he was doing just before he was struck by the engine, does not appear, except from the statements of this engineer. The engineer testified that when he first saw the deceased he was only about fifteen feet in front of the engine between the rails of the track on which the train was approaching and a little nearer the rail next to the

fence than that next to the platform and was north of the plank crossing over the tracks, and it was then impossible to stop the train before the engine struck the deceased. The engineer made all the effort he could but failed. After the train stopped, the deceased was found lying between the east rail of the track and the picket fence and ten to fifteen feet north of the plank crossing over the tracks. The train as it approached the station came around a curve, but was within full sight of the platform and track of the north-bound local trains for a distance of 900 feet before it struck the deceased. When the deceased arrived at the Williams Bridge station that day he must have alighted on the platform of the north-bound trains, and we must assume he knew and understood that he must get upon the return south-bound train from the platform on the other side of the four tracks. He had resided for some years in and about New York, and must have understood that passengers were not permitted to cross over the tracks through the picket fence and gates, which were kept closed, and that if he desired to go from one platform to the other he should do so by way of the staircases and the bridge over the tracks. Whatever may be said as to the alleged negligence of the defendant, we are unable to conceive any theory upon which the jury would have been justified, under the evidence, in finding that the deceased was free from contributory negligence. The burden was upon the plaintiff to establish this element of the cause of action to the satisfaction of the jury. The deceased must have known and understood that he had no right to cross the tracks, from one platform to the other, through the picket fence. And beyond this, the approaching train was in full view from the time it came around the curve, 900 feet away. Where he was or what he was doing while the train was running that 900 feet did not appear. If he was standing on the track he was clearly negligent. If, after the train came in sight, he left one platform to go over to the other in front of the train he was clearly negligent, and if he was upon or crossing over the track, without looking for the approach of the train and did not see it, he was clearly negligent. There is no theory of the case upon which the jury would have been justified, under the evidence, or in view of any inferences that could be drawn from it, in finding affirmatively that the deceased was free from contributory negligence.

We think the court very properly took the case from the jury and dismissed the complaint. The judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and PARKER, JJ., concurred.

Judgment affirmed, with costs.