## KENT v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

RAILROADS—NEGLIGENCE—FENCED TRACK—OPEN GATE—INJURY.

At a certain place defendant's tracks, inclosed by a fence, ran between those of another road, which maintained a station there. On the westerly side of the tracks was the main station, and on the easterly side a booth for the sale of tickets. There was a bridge over all the tracks for the use of passengers. In front of the station, on the westerly side, was a platform, from which a plank walk led across the tracks, with a gate in each side of defendant's fence. The way was used by the station agent, and for the transfer of baggage. The agent had left the westerly gate open, but closed the easterly one; and deceased (a practical railroad man) went through the open gate, and was crossing the tracks, when, seeing an approaching train almost upon him, he sprang to the opposite gate, which he could not open, and was swept under the train and killed. There was no bell rung or whistle blown. *Held,* that there was no negligence on the part of the defendant, since the fence was notice that persons were not permitted on the tracks or expected to be there, and, one gate being closed, the open one was not an invitation to cross.

Appeal from trial term.

Action by Charles E. Kent, administrator, etc., against the New York, New Haven & Hartford Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Thomas P. Wickes, for appellant.

Henry W. Taft, for respondent.

HATCH, J. By this action the plaintiff sought to recover damages of the defendant for claimed negligent acts committed by it, and causing the death of his son. Upon all of the questions whereon the rights and liabilities of the parties depend, the evidence is without substantial dispute. The accident happened at Bedford Park station, situated upon the Harlem Railroad. While the defendant's tracks upon which it operates its trains run by this station, yet the defendant does not maintain at this point any station. The defendant's tracks at this point for a considerable distance are inclosed by picket fences erected upon both sides of its tracks, for the purpose of excluding the general public and all persons and vehicles from passage over them; the object being to create a condition permitting the safe operation of express trains running at a high rate of speed. Upon each side of these inclosed tracks are the tracks of the Harlem Railroad, which run by the station, and are used for the purpose of local traffic. Upon the westerly side of the tracks is situate the main station, and upon the easterly side are a platform and a booth for the sale of tickets. At the southerly end of the westerly station was constructed a bridge over all of the tracks for the use of passengers desiring to reach either side of the station. Approach to the bridge upon the westerly side was through the station. In front of the station upon this side was a platform about six feet wide, from which led a planked way over the de-

fendant's tracks to the easterly side. At the point where the plank walk began was a gate in the fence, and also a corresponding gate upon the other side in the fence. This planked way was used by the station agent for the purpose of passage and the transportation of baggage from one side to the other. It was not intended for purposes of use by passengers or the public, although upon occasions old and sick passengers had been taken across the tracks that way. The orders of the defendant, however, prohibited its use, except for the agent, as above stated. The gates were fastened by a hasp and lock, although they were not always locked. Upon the night of the accident the station agent had made use of the way several times. The last time he passed from west to east; leaving the westerly gate open, but closing the easterly one. The accident happened about half past 7 o'clock in the evening, and at the time there were several persons upon the easterly side, waiting to take a local train to New York. The place was well lighted, the distance between the fences about 24½ feet, and the condition of the gates and planked way was plain to be seen from either side by any person making observation of the condition. At about this time there was due to pass the station a fast express train over the defendant's tracks. The deceased was employed as a station agent upon the New York & Northern Railroad, and had been for five years. Upon the night in question he came to the westerly station, passed through the open gate in the fence, and proceeded to cross the tracks upon the planked way. The approach of the express train due at that time, running at a very high rate of speed, was visible to the persons standing upon the easterly platform, and was also visible to the deceased, had he looked. Some of the persons called to the deceased to go back, but he did not appear to hear. At least, he did not heed the warning, but continued on to the second track, when, discovering his peril, he sprang to the fence. The gate being closed, he could not get through, and drew his body as close to the fence as he was able. The engine, tender, and one or more cars passed him safely; but attached to the rear of the train, or near the rear, was a vestibule car, wider than those which had passed. This, coming in contact with the deceased, swept him from the fence and under the train, producing his death. The engineer upon the train did not see the deceased at any time, nor did any of the other operators of the train know of the accident until report of it was made. The view of an approaching train from the point where the deceased came upon the track was unobstructed for a distance of 1,900 feet. The headlight of the train was lit, and both the light and noise of its approach were seen and heard by the persons standing upon the platform, although no bell was rung or whistle blown. Upon these facts, the court below determined that the deceased was guilty of contributory negligence, and dismissed the plaintiff's complaint.

In the view which we take of this case, it is not necessary that we should determine whether the ruling of the trial court upon this question was correct or not. We think the complaint was properly dismissed for the reason that no facts appeared upon which can be

predicated the negligence of the defendant. The latter, by erecting its fences and inclosing its tracks, had created a condition whereby all persons except agents and employés were excluded from the use of the tracks, or of the right to pass over them, or for any other purpose. The condition was created for the express purpose of enabling the defendant to operate its trains at a high rate of speed. The existence of the fences was notice to all persons that they were not expected to be or permitted to be upon the tracks. That the object was to keep the tracks clear was obvious to any person who observed the situation, and of this condition and its purpose all persons having opportunity to observe it are chargeable with notice. Riester v. Railroad Co., 16 App. Div. 216, 44 N. Y. Supp. 739. At least, the deceased is so chargeable, as he was a practical railroad man, and presumably familiar with such structures and the purpose of their existence.

It is urged that the existence of the open gate constituted an invitation to cross the tracks by this route. If both gates had been open, there might be force in this suggestion. Indeed, if both gates had been open, there would have been no accident. The deceased reached the easterly gate, but, being closed, it barred his way. The deceased, as we have seen, was bound by the notice which the fences gave. When he saw the open gate, if he sought to make use of it, he was bound to look for the purpose of seeing to what point the way led, so far as the same was within the range of his vision. Had he so looked, as the way and opposite fence were visible, he would have seen that the latter presented a barrier to his crossing, and that the open gate led nowhere except upon the tracks. This condition repelled the idea of there being an invitation to cross at that point, as the entire situation gave notice that he could not cross. By this fact he was bound, as well as by any other which the condition presented. No basis exists, therefore, to raise out of the open gate an implied notice that it furnished a way to cross the tracks, or that thereby an implied invitation was extended to make use of the way. The plaintiff scarcely made claim upon the oral argument that the defendant was guilty of negligence in any other respect than such as could be inferred from the open gate. So far as his brief makes other claim of negligence in anything which the defendant did or omitted to do, such claim cannot be sustained. The defendant was not bound to give any signal of the approach of the train, as it had no reason to expect that any person would be upon the track. On the contrary, it had every reason to believe that no person would be there. It was authorized to run its trains at such rate of speed as it chose, as it had taken, not only reasonable precautions, but extraordinary precautions, to insure safety in this regard.

No other questions require consideration. As there was no negligence established upon the part of the defendant, there could be no recovery. The judgment should therefore be affirmed, with costs. All concur.